UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES FARREL DAVIS,

      Plaintiff,

v.                                 Case No. 3:14cv103/CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.
_____/

## MEMORANDUM ORDER

      This case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying James Farrel Davis' applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83.  The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73, for all proceedings in this case, including entry of final judgment.  Upon review of the record before the court, I conclude that the Administrative Law Judge's ("ALJ") decision was not based upon substantial evidence.  The decision of the Commissioner, therefore, should be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUES ON REVIEW

Mr. Davis, who will be referred to as claimant, plaintiff, or by name, raises three issues.  He claims (1) the ALJ improperly evaluated evidence of plaintiff's drug addiction and alcoholism; (2) the ALJ's decision to afford less than significant weight to the consultative examination of Dr. Julian Salinas is not supported by substantial evidence; and (3) the ALJ's reliance on the grids at Step 5 of the sequential evaluation was inappropriate.  (Doc. 19).

## PROCEDURAL HISTORY

On March 15, 2011, Mr. Davis completed applications for DIB and SSI, alleging disability beginning on January 31, 2008.   T. 98-99, 211-221.[1]   The applications were denied initially on May 27, 2011, T. 150-162, and upon reconsideration on July 12, 2011.  T. 164-169.  Plaintiff appeared before the ALJ for a hearing on August 24, 2012.  T. 74.  On October 12, 2012, the ALJ issued a decision denying claimant's applications for DIB and SSI.  T. 57-67.  The Appeals Council denied claimant's request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  T. 46-51.  The Appeals Council also denied claimant's request for reopening but granted him additional time to file a civil action.  T. 1-3.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

- •   Claimant meets the insured status requirements of the Social Security

---

[1] The administrative record, as filed by the Commissioner, consists of six volumes (docs. 9-2 through 9-7), and has 427 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

Act through December 31, 2014.  T. 59.

•      Claimant has not engaged in substantial gainful activity since January 31, 2008, the alleged onset date.  T. 59.

•      Claimant has the following severe impairments: osteoarthritis of the right shoulder; hypertrophic changes of the uncovertebral joints of the lower cervical spine; delusional disorder; opiate and amphetamine abuse; alcohol dependence; and major depressive disorder, severe with psychotic features.  T. 59.

•      Claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except he can frequently (up to two-thirds of the workday) reach in all directions, including overhead, with the dominant right arm.  He cannot work with the public.  He cannot climb ladders, ropes, or scaffolds.  He cannot work around unprotected heights and dangerous machinery. He can only perform simple, routine, and repetitive unskilled tasks.  T. 62.

•      Claimant is unable to perform any past relevant work.  T. 65.

•      Claimant was born on January 10, 1959, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Claimant subsequently changed age category to closely approaching advanced age. T. 65-66.

•      Claimant has a limited education and is able to communicate in English. T. 66.

•      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  T. 66.

•      Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  T. 66.

•      Claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2008, through the date of this decision.  T. 67.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support."  *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).   Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.    If  the claimant is performing substantial gainful activity, he is not disabled.

2.    If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.    If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[3]

5.    Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>[4]

At the hearing before the ALJ, claimant offered testimony as to his health and

---

[3] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir.  1986).

[4] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

daily activities.  Arthritis in his right shoulder and elbow prevent him from lifting anything over five to ten pounds.  T. 76-77.  He can stand on his feet for half of a day but he must wear high-top boots due to ankle problems.  T. 77.  Ankle problems also limit his ability to stoop down at work.  T. 78.  Plaintiff has trouble interacting with his neighbors; he believes they use methamphetamine and go onto his property and steal from him.  T. 80.  Plaintiff testified "they've killed my animals and threatened my life, [and] my mother and father's life."  T. 80.  "I have to stay awake at night trying to make sure my family doesn't get hurt."  T. 80.  Mr. Davis has no friends and rarely leaves his property because he fears his neighbors.  T. 86-87.  He spends the day walking around his property making sure nothing has been stolen and his property is secure.  T. 86.  Although he drinks alcohol, claimant has decreased his consumption from eighteen beers per day in 2008 to four beers per day in 2012.  T. 91-92.  His use of alcohol does not limit his ability to work.  T. 93-94.

Medical records also appear in the evidence before the Commissioner.  On January 22, 2008, plaintiff was taken to the Fort Walton Beach Medical Center Emergency Room for "marked paranoid ideation and depression."  T. 20.  Claimant reported abusing alcohol, pain medication, and his ADHD medication.  T. 20.  He had developed homicidal ideation towards his neighbors, whom he believed were producing methamphetamine.  T. 20.  Treatment consisted of individual and group psychotherapy sessions, as well as occupational and recreational therapy.  T. 22.  Plaintiff was also treated with several medications, including Wellbutrin, Lexapro, Naproxen, Geodon, Trazadone, and Provigil.  T. 22-23.  He responded well to treatment and was discharged on January 28, 2008, with diagnoses of major depressive disorder, severe with psychotic features; alcohol dependence;

amphetamine and opiate abuse; and history of osteoarthritis in bilateral shoulders and ankles.  T. 20-23.  A behavioral consultation report prepared during his stay at the hospital indicated Mr. Davis' global assessment of functioning ("GAF") score was 20 on January 26, 2008, and the highest GAF score for the previous year was 35.  T. 25.

Mr. Davis received follow-up treatment from Dr. Igleburger at Emerald Coast Mood & Memory from 2008 to 2009.  T. 380-385.  A month after discharge, plaintiff "overall [was] doing considerably better than on admission to the hospital," but continued to experience some symptoms of depression.  T. 385.  In both April and July of 2008, feelings of depression secondary to joblessness and increasing debt were reported.  T. 383, 384.  On September 4, 2008, plaintiff experienced "less paranoia in relation to his neighbors."  T. 382.  On February 9, 2009, claimant "stopped taking Geodon because it was making him nauseous and he ha[d] clearly started to become more paranoid though he [was] not as worried about his neighbors."  T. 381.  On June 23, 2009, plaintiff denied thoughts of harming others or suicide and reported no paranoia; his combination of medication was working well. T. 380.

Mr. Davis visited the Pattison Professional Counseling Center on February 2, 2011.  T. 387.  After evaluating claimant, a practitioner at the Center diagnosed him with depressive disorder and assigned a GAF score of 60.  T. 389.  Claimant's prognosis was "good" and he was "highly motivated" for treatment.  T. 389.  The practitioner recommended individual therapy and referred plaintiff to the Bridgeway Center for medication.  T. 390.  At the Bridgeway Center, Rita Furline assessed plaintiff's mental health.  T. 410.  Plaintiff presented with complaints of depression

and anxiety.  T. 410.  His mood was described as anxious and angry but no suicidal/homicidal ideation or hallucinations/delusions were reported.  T. 410-411. Baesd on his prior history, plaintiff was diagnosed with major depressive disorder and alcohol dependence with psychosis.  T. 411.  Ms. Furline referred claimant to Sikandar Khan, M.D., for treatment.  T. 411.  Dr. Khan performed a psychiatric evaluation of claimant on April 5, 2011. T. 413-415.  Claimant and his wife informed Dr. Khan of claimant's problems with his neighbors and past treatment for mental health issues.  T. 413-414.  Plaintiff denied any suicidal or homicidal thoughts.  T. 414.  His insight was impaired because of his drinking and his delusions.  T. 414.  Dr. Khan diagnosed claimant with major depressive disorder with psychotic features and alcohol dependence.  T. 414.  Plaintiff's current GAF score was 50 and had been so for the previous year.  T. 414.  Dr. Khan provided Mr. Davis' wife with samples of Geodon to administer after plaintiff ceased drinking for ten days.  T. 414.  Claimant refused to go to detox and asserted he could achieve sobriety on his own.  T. 415.  Dr. Khan provided claimant with Librium and suggested his wife purchase Thiamine over the counter.  T. 416.

On May 20, 2011, Julian Salinas, Ph.D., performed a consultative psychological examination of plaintiff.  T. 404-407.  Claimant stated he had not been able to keep a job because "of the people I'm having to deal with right now.  They deal in a lot of drugs.  I worry about my family."  T. 405.  Claimant reported he had not taken psychotropic medications for two years and complained of persistent sadness, tearfulness, decreased self-worth, low motivation, anhedonia, and periods of not getting out of bed.  T. 405.  Plaintiff was diagnosed with depressive disorder and delusional disorder and assigned a GAF of 48.  T. 407.  Dr. Salinas believed

plaintiff "would likely experience improvement should he resume psychiatric consultations and particpate in cognitive-behavioral therapy."  T. 407.

As part of the evaluation of claimant's applications for benefits, James Levasseur, Ph.D., and David Tessler, Psy. D., examined claimant's medical record and offered their opinions as to claimant's mental limitations.  On May 26, 2011, Dr. Levasseur opined claimant's history "of ADHD, drug and alcohol abuse, [and] depression will all impact [his] ability to sustain concentration but he retains the ability to complete most tasks most of the time, [and] has recently started treatment again and is expected to improve as he has in the past."  T. 105.  He was able to understand and follow instructions; able to produce concentrated effort needed to complete most tasks most of the time; able to get along with others most of the time; and able to adapt to the demands of a work environment of low social demand.  T. 106.

Similarly, Dr. Tessler concluded that "[w]hile [claimant] clearly would have some trouble with memory, attention and social interaction, the symptom severity noted would not preclude the completion of [simple, repetitive, tasks]."  T. 130-131.  The doctor noted claimant responded well to medication following his hospitalization in 2008.  T. 139.  Dr. Tessler assigned "minimal weight" to the opinion of Dr. Salinas because it was a "one shot presentation" and functional data indicated claimant could "drive, care for a child, maintain a schedule, make purchases, manage money, [go] to church, [and do] some chores."  T. 139.

<u>ANALYSIS</u>

Plaintiff contends the ALJ erred by (1) improperly evaluating evidence of plaintiff's drug addiction and alcoholism; (2) affording less than significant weight

to the consultative examination of Dr. Julian Salinas; and (3) relying on the Medical Vocational guidelines ("grids") at Step 5 of the sequential evaluation. (Doc. 19). After careful review, the undersigned concludes the ALJ's evaluation of the claimant's drug and alcohol issues and decision to rely on the grids was improper. Because the ALJ considered claimant's drug and alcohol use in evaluating Dr. Salinas' opinion, the court will refrain from addressing whether the weight given to that opinion was supported by substantial evidence and remand the issue to the ALJ for a new determination with application of the proper legal principles.

Plaintiff first asserts the ALJ did not properly evaluate the evidence of plaintiff's drug and alcohol addiction. (Doc. 19, p. 6). Plaintiff contends the "ALJ evaluated the evidence of [p]laintiff's drug and alcohol addiction in determining that [p]laintiff was [not] disabled despite the medical evidence of record, rather than proceeding through the sequential disability evaluation and considering the medical evidence of drug and alcohol addiction afterward." (*Id.*). The ALJ discussed plaintiff's use of drugs and alcohol in several portions of his opinion. In reference to claimant's January 2008 hospitalization, the ALJ stated claimant's "global assessment of functioning (GAF) score on admission was 20, but his urine drug screen was positive for amphetamines and opiates, and he admitted to increasing abuse of alcohol and prescribed medications." T. 64. Next, the ALJ noted Mr. Davis' GAF score dropped from 60 to 50 between February and April of 2011. T. 64. The ALJ accounted for the drop in claimant's GAF score in part by referring to his alcohol use, stating, "[h]owever, he admitted in April 2011 that he was not taking medication and was drinking 'a lot.'" T. 64. Similarly, after noting Dr. Salinas' diagnosis of moderate to severe depression, the ALJ stated "[h]owever, the claimant reported at

the time that he drank alcohol daily and consumed about twelve beers over the course of a week." T. 64. The juxtaposition of descriptions of Mr. Davis' condition with statements concerning his use of drugs and alcohol indicates the ALJ discounted the weight assigned to those descriptions because of the drug and alcohol use.

Under 42 U.S.C. § 423(d), "[a]n individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The Commissioner has interpreted the language of the statute by finding that drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease. 20 C.F.R. §§ 404.1535, 416.935. The claimant has the burden of proving that he would still be disabled even if he were to stop using alcohol or drugs. *Doughty v. Apfel,* 245 F.3d 1274 (11th Cir. 2001).

The plain language of the regulations implementing 42 U.S.C. § 423(d)(2)(C) indicates the ALJ erred by citing claimant's drug and alcohol use as reasons to discount the severity of claimant's condition. Those regulations state "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). This language establishes that consideration of claimant's alcohol or drug use is appropriate if and when the ALJ makes an initial determination that the claimant is disabled. As the Tenth Circuit has stated:

> The implementing regulations make clear that a finding of disability is
> a condition precedent to an application of § 423(d)(2)(C). 20 C.F.R. §
> 416.935(a). The Commissioner must first make a determination that the

claimant is disabled.  *Id.*  He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol.  *Id.* § 416.935(b)(1).

*Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001); *see also Mcrea v. Astrue*, 407 F. App'x 394, 397 (11th Cir. 2011) ("Under 42 U.S.C. § 423(d)(2)(C) and its implementing regulations, only after the ALJ determines that a claimant is disabled and finds medical evidence of drug addiction does the ALJ 'determine whether ... drug addiction ... is a contributing factor material to the determination of disability.'" (*citing Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir.2001))); *Borges v. Astrue*, No. 8:09-cv-918-T-24TBM, 2010 WL 2612940 *5 (M.D. Fla. June 10, 2010) ("[A]pplication of the drug addiction statute, 42 U.S.C. § 423(d)(2), and implementing regulations, 20 C.F.R. §§ 404.1535(a), 416.935(a), comes into play only after a claimant is found disabled and not in determining impairment severity at step two.").

The Commissioner argues these regulations do not apply and the ALJ was not required to make a materiality determination because "the ALJ found [p]laintiff was not disabled despite his drug and alcohol use[.]" (Doc. 20, p. 14).  The ALJ, however, cited claimant's drug and alcohol use as support for discounting the severity of his condition, including the existence of low GAF scores.  By discounting medical opinions based on claimant's drug and alcohol use before a finding of disability, the ALJ seems to have implicitly determined that substance abuse would be a material factor in a finding of disability.  A consideration of substance abuse in that manner, however, contravenes the language of the regulations and the case law.  *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) ("The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of

[the claimant's] alcoholism on his other mental impairments.  If, and only if, the ALJ found that [the claimant] was disabled under the five-step inquiry, should the ALJ have evaluated whether [the claimant] would still be disabled if he stopped using alcohol.").

On remand, the ALJ must first determine whether claimant is disabled without consideration of his drug and alcohol use.  If the ALJ finds claimant is disabled, the ALJ may then consider whether claimant's drug and alcohol use is material to the finding of disability.  Claimant has also challenged the ALJ's decision to assign less than significant weight to the opinion of Dr. Salinas.  Because the ALJ referred to claimant's drug and alcohol use while discussing Dr. Salinas' assessment, the court will refrain from determining whether the weight given to Dr. Salinas' opinion is supported by substantial evidence.  The ALJ is directed to reconsider the weight assigned to Dr. Salinas' opinion in accordance with the above instructions.

Plaintiff next argues the ALJ erred by relying on the Medical Vocational Guidelines ("grids") to determine claimant could perform other work in the economy. (Doc. 19, p. 8-9).  Once a claimant proves he can no longer perform his past relevant work, "the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  One way for the Commissioner to carry this burden is through an application of the grids.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

> The grids are a series of matrices which correlate a set of variables—the claimant's residual functional capacity (i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience [including whether the previous work was skilled or unskilled].  Upon the entry of a set of these

variables into the appropriate matrix a finding of disabled or not
disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).

As a predicate to determining whether exclusive reliance on the grids is
appropriate, the ALJ must first categorize the claimant's impairments as either
exertional or nonexertional.  *See, e.g.*, *Phillips v. Barnhart*, 357 F.3d 1232, 1241–43
(11th Cir. 2004).  Exertional impairments affect an individual's ability to meet the
seven strength demands of the job:  sitting, standing, walking, lifting, carrying,
pushing, and pulling.  *Id.* at 1241 n.11.  Nonexertional impairments affect an
individual's ability to meet other work-related demands and include limitations such
as pain, medication side effects, and depression.  *Id.*; *MacGregor*, 786 F.2d at 1054.
An ALJ may rely exclusively on the grids when each factor used in the determination
describes the claimant's situation, and when the case involves only exertional
impairments.  *Foote*, 67 F.3d at 1559.  By contrast, if the claimant has a nonexertional
impairment that limits a wide range of work at a given level, an ALJ must consult a
vocational expert.  *Id.*     Here, the ALJ found that claimant's residual functional
capacity was limited by an inability to work with the public.  T. 62.  Plaintiff contends
this nonexertional impairment significantly limits his basic work activities and
precludes reliance on the grids for a determination of non-disability.  (Doc. 19, p. 8-
9).  The ALJ, however, found Mr. Davis' "additional limitations have little or no
effect on the occupational base of unskilled medium work.  A finding of 'not
disabled' is therefore appropriate under the framework of these rules."  T. 66.  The
ALJ proceeded to explain why most of claimant's limitations did not prevent the
performance of a wide range of work at the medium, light, and sedentary levels:

Per the guidance found within Social Security Rulings 83-14 and 96-9p,

relatively few jobs in the national economy require ascending or descending ladders, ropes, and scaffolding, and the inability to ascend or descend ropes and scaffolding has very little or no effect on the unskilled light or sedentary occupational base. Social Security Ruling 85-15 also specifies that a person who is "restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that existed at all exertional levels." Although reaching is required in almost all jobs, the claimant's limitation to frequent reaching with the right arm does not result in significant limitations in reaching which would significantly erode the light and sedentary occupational base (SSR 85-15).

T. 67. Having made these observations, however, the ALJ failed to address whether claimant's inability to work with the public would significantly erode the medium, light, and sedentary occupational bases.

The Commissioner urges the ALJ's reliance on the grids was appropriate, surmising "unskilled work generally deals more with objects than with people." (Doc. 20, p. 13). Although some courts have found the use of the grids appropriate when a claimant was unable to work with the public, *see e.g.*, *Garcia-Martinez v. Barnhart*, 111 F. App'x 22 (1st Cir. 2004); *Woods v. Colvin*, No. CIV-13-763-HE, 2014 WL 2801301 (W.D. Okla. May 28, 2014); *Ross v. Comm'r of Soc. Sec.*, No. CIV S-09-1742-CMK, 2011 WL 1081910, (E.D. Cal. March 21, 2011), this court finds the reasoning articulated by the court in *Nelson v. Colvin*, No. 12-23023-CIV, 2014 WL 1334110 (S.D. Fla. April 3, 2014) to be persuasive. In *Nelson*, the court addressed a scenario almost identical to the one present here; the ALJ-formulated residual functional capacity indicated the claimant could perform medium work but was restricted from: "climbing ladders, ropes, and scaffolds; work involving unprotected heights and hazardous machinery; exposure to fumes, odors, dusts, gases,

and poor ventilation; and working with the general public." *Nelson*, 2014 WL 1334110 at *5. The court held the ALJ's reliance on the grids was inappropriate because of the claimant's inability to work with the public. *Id.* *5-6. The court expressly rejected the argument Commissioner advances here, finding "just because unskilled jobs primarily involve dealing with objects, rather than data or people, does not mean that a significant number of unskilled jobs do not involve any work with the general public. There may be a large number of jobs where, although contact with the public isn't the primary focus of the job, the inability to interact at all with the general public would still preclude employment in that position because of even incidental contact." *Id.* at * 6. As the *Nelson* court, adopting the Report and Recommendation of the Magistrate Judge, summarized:

> [I]t is apparent to the Court that the ALJ should not have summarily concluded, without support from the record or a vocational expert, that restricting [the claimant's] contact with the general public would have an insignificant impact on the occupation base. Such ambiguities regarding the effect that this restriction might have, without any other available guidance, should be resolved by consulting a vocational expert. Absent testimony from a vocational expert, the ALJ's conclusory determination that [the claimant] is capable of the full range of medium work, despite [the] inability to work with the general public, is not supported by substantial evidence. The Commissioner, then, has not carried her burden, at step five, of establishing that [the claimant] can perform other work.

*Id.* Likewise, in the present case, the ALJ should have consulted with a vocational expert to determine the effect Mr. Davis' inability to work with the public would have on his ability to perform other work in the economy. On remand, therefore, the ALJ must consult a vocational expert to make a determination on this issue.

## CONCLUSION

In sum, by using the grids and relying, at the stage and for the purpose he did, on claimant's alcohol and drug use, the ALJ did not apply the correct legal principles and rendered a decision not supported by substantial evidence.  On remand, the ALJ should reevaluate the medical evidence in accordance with the instructions in this order and consult with a vocational expert to determine claimant's employability.

Accordingly, it is ORDERED:

The Commissioner's decision should be set aside, and the matter REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 18th day of February, 2015.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**